UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMERSON RADIO CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>FOK HEI YU a/k/a VINCENT FOK, and JOHN DOES 1-10 and ABC CORP. 1-10,<br><br>        Defendants. | Case No.: 2:20-cv-01618-WJM-MF<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

    This matter arises out of Defendant Fok Hei Yu's a/k/a/ Vincent Fok ("Fok" or "Defendant") alleged conduct while serving as a "Provisional Liquidator" of Plaintiff Emerson Radio Corporation's ("Emerson" or "Plaintiff") majority shareholder. The matter comes before the Court on Defendant's motion to dismiss with prejudice. ECF No. 5. For the reasons set forth below, the motion is **GRANTED** except as to prejudice on Count 3 only.

**I.   BACKGROUND**[1]

    Plaintiff is a consumer electronics company incorporated in Delaware with a principal place of business in Parsippany, New Jersey. Compl. ¶ 2. During the relevant time period, Emerson's parent company and majority shareholder was a Hong Kong based entity known as Grande. *Id.* ¶ 9. In May 2011, Grande was sued by one of its creditors in Hong Kong. *Id.* ¶ 11. As a result of the suit, the Hong Kong court appointed Defendant Fok—a Hong Kong resident—and Roderick Sutton (not named in this suit) as joint Provisional Liquidators ("PLs"). *Id.* ¶ 12. Fok was empowered to "ascertain, take possession of, collect, give valid receipts for and protect' Grande's assets for the benefit of Grande's creditors." *Id.* ¶ 13. According to Plaintiff, Fok was not entitled to sell Grande's stake in Emerson without court approval. *Id.* ¶¶ 14-15.

    In August 2011, Fok appointed himself to Emerson's board pursuant to his powers as PL. *Id.* ¶ 16. In March 2013, "Fok advised Emerson at a Board meeting that he was 'obligated to liquidate' all of Grande's shares in Emerson as a Liquidator of Grande." *Id.* ¶ 20. Fok also delivered a letter to Emerson's board advising it of the same. *Id.* Ex. B. However, in July 2013, Fok provided a comment to Emerson's draft 10-K, noting: "the use of the word 'obligated' is inaccurate. The provisional liquidator has the power but not the obligation to

---

[1] The following facts, taken from the complaint and documents attached thereto, are accepted as true for the purposes of this opinion.

sell, so I would suggest changing 'obligated' to something like 'intend to explore the possible sale of.'" *Id.* Ex. C. Emerson's Executive Vice President, Chief Financial Officer, and Corporate Secretary responded that Emerson's lawyer selected "'obligated' because that is a direct quote from the letter that [Fok] sent to the Board on 3/20/13." *Id.*

Plaintiff alleges that, at the time of his statements made to Emerson's board, Fok knew that he was *not* obligated to sell Grande's shares in Emerson. *Id.* ¶ 22. Though the dates are absent, allegedly "[a]s a result of Fok's misrepresentation, Emerson formed a special committee to investigate what options it had to sustain its business." Fok's handpicked board members allegedly spearheaded the committee and "spent millions of dollars . . . to investigate ongoing options to sustain Emerson's business." *Id.* ¶ 28. In addition to direct fees, the investigations purportedly distracted management, "which caused Emerson to lose major contracts and accelerated Emerson's declining revenues." *Id.* ¶ 31. Fok "knew or should have known that these investigations were pointless" and "the only strategy that was actually implemented was Fok's special committee's investigation to approve a special dividend, which generated approximately ten million dollars in funds to Grande." *Id.* ¶ 34. Fok allegedly sought to "upstream cash to Grande' in order to pay his PL fees" and resigned as a board member in October 2014, after the dividend was paid. *Id.* ¶¶ 35-37. Further, Fok and board members aligned with his employer, FTI, "were paid over five hundred thousand dollars of Emerson's funds while Fok served as [PL]." *Id.* ¶39.

Plaintiff brings three causes of action based on Fok's "purported 'obligation' to liquidate the common stock of Emerson held by Grande." *Id.* ¶ 44 (Count 1: Fraudulent Misrepresentation), 52 (Count 2: Negligent Misrepresentation), & 65 (Count 4: Constructive Fraud). Plaintiff brings another count for Unjust Enrichment (Count 3) for Fok "personally enrich[ing himself] at Emerson's expense by collecting massive fees as Liquidator by orchestrating unnecessary and wasteful business activities." *Id.* ¶ 62.

## II. JURISDICTION AND VENUE

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper given that "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" in this district. 28 U.S.C. § 1391.

Defendant challenges the Court's personal jurisdiction. Plaintiff alleges that as part of committing the alleged wrongdoing, Defendant appointed himself, and several associates, to Emerson's board of directors. Compl. ¶¶ 16-17. He allegedly threatened other board members if they opposed his preferred course of conduct. *Id.* ¶ 30. Further, as a result of the course of conduct, he received significant payments from Emerson, which has its principle place of business in New Jersey. *Id.* ¶¶ 2, 39.

At the motion to dismiss stage, those allegations are sufficient under New Jersey's long arm statute to confer personal jurisdiction. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) ("[T]he New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process."); *see also*; *Ross v. Celtron Int'l, Inc.*, 05-cv-

2

1300, 2005 WL 2562977, at *4 (D.N.J. Oct. 11, 2005) (finding jurisdiction due to membership on United States based company's board).

## III.  DISCUSSION

### A.  *Forum Non-Conveniens*

Defendant argues that even if the Court finds it has personal jurisdiction, the matter should be dismissed under the doctrine of *forum non-conveniens*. Under that doctrine, courts first decide whether an alternative forum is adequate.  If so, courts may exercise their discretion to decline jurisdiction "when litigating the case in the chosen forum would either oppress a defendant 'out of all proportion to plaintiff's convenience' or cause the court 'administrative and legal problems.'"  *Trotter v. 7R Holdings*, 873 F.3d 435, 439 (3d Cir. 2017) (cleaned up).

#### 1.  *Alternative Forum*

An alternative forum is generally adequate "when the defendant is amenable to process in the other jurisdiction.  In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981) (cleaned up).

Here, Defendant appears amenable to suits in Hong Kong, which recognizes fraud-based and unjust enrichment claims. Mot. at 14-15 (citing Fok & Holander Decls.).  However, as Defendant repeatedly argues, he would be completely immune from liability under Hong Kong law.  Mot. at 20.  Given Defendant's total immunity from liability in Hong Kong, the Court finds Hong Kong would not be an appropriate alternative forum.  *See Piper Aircraft Co.*, 454 U.S. 235, 255 (1981) (finding alternative forum adequate because "there is no danger that they will be deprived of any remedy or treated unfairly").[2]

#### 2.  *Balance of Factors*

Even if Hong Kong were an adequate forum, litigating the case in New Jersey would neither oppress the defendant "out of all proportion" nor cause "administrative and legal problems" such that dismissal would be warranted.

Defendant has failed to demonstrate that he would be oppressed if the case were litigated in this Court. In determining whether a defendant would be "oppressed out of all proportion to plaintiff's convenience," courts consider a variety of "private interests" including "access to proof, availability of process, and other practical issues." *Trotter*, 873 F.3d at 439 (cleaned up). Here, the allegations in the Complaint relate to Defendant's relationship with Emerson, which has its principle place of business in New Jersey. While Defendant acted from Hong Kong, most of the relevant evidence is either within his personal

---

[2] Courts are divided on whether applicable defenses in the alternative forum make it inadequate. However, in finding alternatives adequate despite applicable defenses, courts have either required defendants to waive the defense or found plaintiffs made deliberate, tactical decisions to make the alternative forum inadequate.  *See Levien v. Hibu PLC*, 19-cv-3239, 2020 WL 4371790, at *8 (E.D. Pa. July 30, 2020) (listing cases).  Here, neither occurred.

knowledge or with Emerson and its employees in the United States. To the extent evidence exists in Hong Kong, Defendant has not established that the production of such evidence in this forum would be unduly burdensome. Moreover, although Defendant raises concerns with respect to the ability to compel discovery from Hong Kong-based third-parties, such concerns appear to be unavoidable and would be equally applicable to third parties based in the United States who are asked to testify or produce evidence before a tribunal in Hong Kong.

Likewise, the Court cannot conclude that litigating this case in New Jersey would cause sufficient "administrative or legal problems" to warrant dismissal on *forum non-conveniens* grounds. "In determining whether a venue would cause administrative or legal problems, courts may consider "public interests," such as the burdens on the courts and local juries." *Id.* While Hong Kong law would answer the question of whether Fok was "obligated" to liquidate Grande's shares, there is no dispute that he was not technically "obligated" to sell. Thus, this Court need not address issues of Hong Kong law because, as discussed below, New Jersey law will govern the actual dispute. *See infra* Part III.B. Further, this dispute is focused on the effect of Fok's alleged misrepresentation on a New Jersey-based entity. While this Court is busy, Defendant himself removed the case to federal court. Therefore, it would be inequitable for him to rely on the Court's busy docket to undermine Plaintiff's choice of forum. Accordingly, both the public and private factors weigh against dismissing this suit on *forum non-conveniens* grounds. *See Trotter*, 873 F.3d at 442 (listing factors).

### B. <u>Choice of Law</u>

Defendant argues Hong Kong law should apply to this dispute. Plaintiff disagrees, as does the Court. In diversity cases, this Court looks to the choice-of-law rules of New Jersey in order to decide what body of substantive law applies. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). Under New Jersey law, the Court first asks whether an actual conflict exists. *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008). Here, Defendant points out (and Plaintiff does not contest), that under Hong Kong law, Defendant may be protected by Section 205 of Hong Kong's Companies Ordinance, which generally protects PLs from liability stemming from acts in that capacity. Mot. at 20. New Jersey does not recognize Hong Kong's PL concept or the immunity associated therewith. *Id.* There is therefore an actual conflict between Hong Kong and New Jersey law.

Once a conflict is identified, New Jersey courts apply the "most significant relationship test" set forth in the Second Restatement of Conflict of Laws to determine which jurisdiction's law should apply. With respect to tort claims such as those asserted by Plaintiff in this case, the Second Restatement identifies several factors to be considered in determining which jurisdiction has the most significant relationship to the dispute:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

4

*T.V.*, 197 N.J. at 140-41 (quoting Restatement (second) § 145)).

Here, although the factors cut both ways, New Jersey ultimately has the "most significant relationship to the occurrence." *Id.* The injury to Emerson occurred in New Jersey, while the conduct causing the injury occurred in Hong Kong. The Parties are residents of both New Jersey and Hong Kong. Most importantly, however, the relationship between the parties is centered in New Jersey: their relationship pertains more to Fok's control of Emerson, a New Jersey entity, than to how Fok gained that control through Hong Kong's courts.

The application of New Jersey law to this dispute is also supported by consideration of the principles of Section 6 of the Second Restatement generally applicable to a choice of law analysis.[3] Like Section 145, most of the Section 6 principles cut both ways, but the Court finds particularly significant the justified expectations of the parties (factor d). While Fok has some justified expectation that he would receive immunity, Plaintiff is more justified in assuming, when Fok acted as a majority shareholder or board member of Emerson, he was subject to United States law and liable if he committed fraud. Further, Fok should have anticipated that if he acted fraudulently, he could still be held liable. *See* Hollander Decl. ¶ 9 (opining that liability release "may be revoked on proof that it was obtained by fraud"). If the Court found otherwise, PLs could act with impunity in foreign jurisdictions so long as they obtained a release before being caught, leaving residents without a remedy under local law. Rather than support the international system (factor a), it would create incentives for gamesmanship across jurisdictions. Finally, while less important, the ease of determining and applying the law (factor g) cuts toward applying New Jersey law.

Though close, Section 148 of the Restatement—"Fraud and Misrepresentation"—confirms New Jersey law should apply. While most factors cancel each other out, Plaintiff "acted in reliance upon [D]efendant's representations" in New Jersey (factor a); the subject of the transaction—Emerson's business—was situated in New Jersey (factor e); and Plaintiff rendered performance in New Jersey (factor f). *See* Restatement (Second) § 148.[4] Accordingly, New Jersey law applies to Plaintiff's claims, at least as presently asserted.

### C. <u>Failure to State a Claim Upon Which Relief Can be Granted</u>

Defendant argues that even under New Jersey law, Plaintiff fails to state a claim upon which relief can be granted. To survive a FRCP 12(b)(6) motion to dismiss, plaintiffs must state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The movant bears the burden of showing that no claim has been stated.

---

[3] These principles are: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in determination and application of the law to be applied. *Camp Jaycee*, 197 N.J. at 140 ((quoting Restatement (Second) § 6)).

[4] While not specifically addressed by the Parties, the relevant factors also cut slightly toward applying New Jersey law to Plaintiff's quasi-contractual claim for unjust enrichment. *See id.* § 188

5

*Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Courts accept all factual allegations as true and draw "all inferences from the facts alleged in the light most favorable" to plaintiffs. *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). But courts do not accept "legal conclusions" as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

### 1. *Statute of Limitations (Counts 1, 2, 4)*

Defendant argues Plaintiff's claims are precluded by the statute of limitations. Under New Jersey law, the statute of limitations for fraud, related torts, and unjust enrichment is six years. N.J. Stat. § 2A:14-1. The limitations period begins "when a plaintiff knows or, through the exercise of reasonable diligence, should know of the basis for a cause of action against an identifiable defendant." *The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC*, 230 N.J. 427, 447 (2017).

Plaintiff's fraudulent misrepresentation (Count 1), negligent misrepresentation (Count 2), and constructive fraud (Count 4) claims are based on Fok's alleged "untrue statements of material fact to Emerson's Board of Directors about the Liquidator's purported 'obligation' to liquidate the common stock." Compl. ¶¶ 44, 52, 65. Fok made those statements in March 2013. *Id.* ¶¶ 20-21. By July 2013, Fok notified Emerson's Executive Vice President, CFO, and Corporate Secretary that the statements were inaccurate. *Id.* Ex. C. Accordingly, by July 2013, Plaintiff knew, or should have known, the basis for its fraud-based causes of action. As more than six years passed before Plaintiff filed suit in July 2020, claims based on the alleged "obligation" misrepresentation are precluded by the statute of limitations.

Plaintiff argues that his claims are based on "Defendant's improper actions and self-dealing . . . between 2011 and October 2014." Opp. at 15. However, the only alleged misstatements occurred in March 2013 and were repudiated in July. Plaintiff may have continued to take actions to sell Grande's stake in Emerson after July 2013, but continued reliance on the known-to-be false statement regarding and purported "obligation" to do so was not reasonable. Further, while Fok controlled Emerson in the intervening period, Emerson, as a corporate entity, was certainly on notice that the "obligation" statement was inaccurate by July. Accordingly, the statute of limitations has expired, and Counts 1, 2, and 4 are **DISMISSED WITH PREJUDICE**.

### 2. *Sufficiency of Allegations (Count 3)*

Defendant also argues Plaintiff fails to state a claim for unjust enrichment (Count 3). At the pleading stage, "Plaintiff need only allege facts sufficient to show: 1) Plaintiff conferred a benefit on Defendant; and 2) circumstances are such that to deny recovery would be unjust." *Palmeri v. LG Elecs. USA, Inc.*, 07-cv-5706, 2008 WL 2945985, at *5 (D.N.J. July 30, 2008) (citing *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 437, 608 A.2d 280 (1992)). In other words, Plaintiff must show "that it expected remuneration from the defendant at the time it performed or conferred a benefit on [D]efendant." *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 3:02008 WL 5381227, at *9 (D.N.J. Dec. 17, 2008) (quoting *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994)).

6

Here, Plaintiff alleges that "Fok and FTI-aligned Emerson Board members were paid over five hundred thousand dollars of Emerson's funds while Fok served as [PL]." Compl. ¶ 39.[5] Thus, the portion of these funds paid to Fok satisfies the first element of unjust enrichment.

As to the second element, Plaintiff points to its allegations that (1) Fok "made false statements intending to deceive the company, commit fraud, and engage in self-dealing," Compl. ¶ 41; (2) Fok appointed himself and certain of his colleagues to Emerson's board and committees thereof and subsequently forced Emerson to undertake needless and expensive proceedings, *Id.* at ¶ 1; and (3) Fok and his colleagues were paid five hundred thousand dollars, *Id.* at ¶ 39. However, none of these allegations demonstrate that the funds Fok received are recoverable on an unjust enrichment theory. Paragraph 39 simply lists the money Emerson spent. *Id.* Paragraph 41 is conclusory other than the alleged time period of Fok's "self-dealing and fraudulent activities." *Id.* at ¶ 41. Paragraph 1 merely summarizes the overarching allegations in the Complaint. *Id.* at ¶ 1. The only other facts alleged—that Fok "interfere[d] with Emerson's business relationships," "collect[ed] excessive fees," and "distracte[ed] Emerson's management," Compl. ¶ 1—are either conclusory or fail to demonstrate that denying recovery would be unjust. Simply put, these allegations fail to show what sort of remuneration Plaintiff expected but did not receive from Fok, particularly in light of Fok's July 2013 acknowledgment that his prior "obligation statements" were inaccurate.

Accordingly, Count 3 is **DISMISSED**. However, because more specific statements of wrongful conduct (beyond the repudiated "obligation" statements) could save Plaintiff's unjust enrichment claim, dismissal is **WITHOUT PREJUDICE**.

---

[5] It is unclear which funds are directly at issue with respect to Plaintiff's unjust enrichment claim. Though Plaintiff emphasizes that its unjust enrichment claim concerns "the several hundred thousand dollars" paid directly to Fok by Emerson rather than any payment of Fok's PL fees, Opp. at 29-30, the Complaint appears to contradict this statement by alleging in Count III itself that "After taking complete control of Emerson, Fok personally enriched himself at Emerson's expense *by collecting massive fees as Liquidator* by orchestrating unnecessary and wasteful business activities by Emerson as detailed above." Compl. ¶ 62 (emphasis added). There is no allegation, however, either that Emerson itself paid for Fok's PL fees or that it expected any remuneration therefor. As such, Plaintiff cannot state a claim for unjust enrichment based on the payment of Fok's PL fees, and the Court will focus solely on the alleged payments apparently made to Fok as a member of Emerson's board.

## IV.     CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss, ECF No. 5, is **GRANTED** except as to prejudice on Count 3 only.  An appropriate Order follows.


|  |  |
|---|---|
|  | */s/ William J. Martini* |
| **Date: October 1, 2020** | **WILLIAM J. MARTINI, U.S.D.J.** |