## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EMERSON RADIO CORPORATION,**<br><br>  Plaintiff,<br><br>v.<br><br>**FOK HEI YU a/k/a VINCENT FOK, and JOHN DOES 1-10 and ABC CORP. 1-10,**<br><br>  Defendants. | Case No.: 2:20-cv-01618-WJM-MF<br><br>**OPINION** |

### WILLIAM J. MARTINI, U.S.D.J.:

This action arises out of Defendant Fok Hei Yu's a/k/a/ Vincent Fok ("Fok" or "Defendant") alleged conduct while simultaneously serving as both a director of Plaintiff Emerson Radio Corporation ("Emerson" or "Plaintiff") and "Provisional Liquidator" of Emerson's parent company and majority shareholder, The Grande Holdings Limited ("Grande"). The matter comes before the Court on Defendant's motion (the "Motion") to dismiss the amended complaint. ECF No. 18. For the reasons set forth below, the Motion is **GRANTED**.

### I.   BACKGROUND[1]

The facts and procedural history of this case were set forth the Court's October 1, 2020 opinion granting Defendant's motion to dismiss the Complaint, ECF No. 14, familiarity with which is assumed.

On October 30, 2020, following the Court's prior opinion dismissing each of the counts of the Complaint, Plaintiff filed its amended complaint (the "Amended Complaint"). ECF No. 16. The Amended Complaint makes a number of new allegations against Defendant, including (1) that the special committee formed as a result of Defendant's alleged misrepresentations regarding the sale of Emerson's shares was lead by Defendant's "hand-picked Board members" and incurred millions of dollars in fees for various legal and financial consultants, AC ¶ 29; (2) that the payment of a special dividend to Grande was unprecedented and that at least one member of Emerson's board questioned whether Defendant was acting in Emerson's best interests in "forcing the issuance of the special dividend to 'upstream' money to Grande and thereby enrich himself as Provisional Liquidator," AC ¶ 39; (3) that a large portion of Defendant's alleged $13 million in fees for serving as Provisional Liquidator of Grande "were

---

[1] The following facts, taken from the Amended Complaint and documents attached thereto, are accepted as true for the purposes of this opinion.

based on monies improperly 'upstreamed' from Emerson by Fok," AC ¶ 43; and (4) that Defendant unjustly enriched himself by using his position as director and chairman of Emerson's board to (a) cause Emerson to directly pay him approximately $193,000 and "fail[ing] to provide any benefit to Emerson" in return, AC ¶ 46, and (b) force Emerson to pay a $15 million special dividend to Grande, a "significant percentage" of which was used to pay his fees as Provisional Liquidator, AC ¶¶ 47-54. The Amended Complaint asserts two claims for unjust enrichment against Defendant – one claim for the direct payments made by Emerson to Defendant in his role as director and chairman of the board, and another claim for the "indirect payments" made by Emerson to Defendant through the special dividend issued to Grande and used to pay Defendant's fees for serving as Provisional Liquidator. AC ¶¶ 55-68.

On December 3, 2020, Defendant filed the instant Motion to dismiss both claims in the Amended Complaint. Specifically, Defendant argues that (1) under Delaware law, which governs the internal affairs of Emerson, Plaintiff's claims are time barred under the applicable three-year statute of limitations; and (2) even under New Jersey law, Plaintiff has failed to state a plausible claim for unjust enrichment.

## II. STANDARD OF REVIEW

FRCP 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under FRCP 12(b)(6), "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The court need not accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION

There are two principal issues the Court must resolve in ruling on the instant Motion. First, the Court must determine whether Delaware or New Jersey law applies to Plaintiff's claims. Second, the Court must then decide whether Plaintiff has stated a claim upon which relief can be granted under the applicable state law. The Court will address each issue in turn.

### A. Applicable Law

Defendant argues that Plaintiff's claims, though stylized as ordinary unjust enrichment claims, actually concern Emerson's internal affairs and, because Emerson is a Delaware

2

corporation, Delaware law should apply. Plaintiff disagrees and argues that not only are its unjust enrichment claims not the sort of breach of fiduciary duty claims typically associated with the application of the internal affairs doctrine, but that the law of the case doctrine and principles of judicial estoppel require the application of New Jersey law to Plaintiff's claims.

### 1.  Law of the Case

Plaintiff argues that this Court's prior decision on Defendant's motion to dismiss the original Complaint, in which the Court applied New Jersey law to Plaintiff's claims after determining that New Jersey had a more significant relationship to the dispute than Hong Kong, is the law of the case, and that, therefore, the Court must continue to apply New Jersey law to the claims alleged in the Amended Complaint.

"The law of the case doctrine 'limits relitigation of an issue once it has been decided' in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 786-87 (3d Cir. 2003) (quoting *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002)). The doctrine is intended to "promote finality, consistency, and judicial economy," *id.* at 787, and applies when a court's "prior decision in an ongoing case either expressly resolved an issue or necessarily resolved it by implication," *UA Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 394 (3d Cir. 2003). However, the law of the case doctrine "does not apply when: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997). In the case of a motion to dismiss, the law of the case doctrine does not apply where "new allegations have been made which change the nature of the record and place it in an altogether different state than it was in at the time the Court decided the issue at hand." *Farmer v. Lanigan*, Civ. No. 12-5716 (SDW), 2016 WL 4107693, at *3 (D.N.J. Aug. 1, 2016).

Here, Plaintiff is correct that the Court engaged in a detailed choice-of-law analysis in ruling on Defendant's first motion to dismiss and determined that, as between Hong Kong and New Jersey, the latter bore the most significant relationship to the claims raised in the Complaint. However, that does not mean that the Court is bound to apply New Jersey law to the two unjust enrichment claims Plaintiff asserts in the Amended Complaint. Indeed, the law of the case doctrine does not apply where, as here, a plaintiff has filed an amended complaint in which the facts pled "are not identical to those in [the] original complaint" and where "the law as it applies to the facts as they now stand must be re-evaluated." *Id.* As noted above, the Amended Complaint adds a number of additional allegations concerning the circumstances of Defendant's alleged conduct, the direct payment of his salary by Plaintiff giving rise to the first claim for unjust enrichment, and the indirect payment of Defendant's Provisional Liquidator fees through the special dividend giving rise to the second claim for unjust enrichment. These additional allegations, as well as the inclusion of two distinct unjust enrichment claims, casts the record in a light different than that which was before the Court when it ruled on Defendant's motion to dismiss the original Complaint. Accordingly, the law of the case doctrine does not apply.

### 2. Judicial Estoppel

Plaintiff also contends that Defendant is estopped from arguing that Delaware law should apply to Plaintiff's claims after having previously argued that Hong Kong law applied to the claims raised in the original Complaint. The doctrine of judicial estoppel "seeks to prevent a litigant from asserting a position inconsistent with one that [they] ha[ve] previously asserted in the same or in a previous proceeding." *Nat'l Utility Serv., Inc. v. Chesapeake Corp.*, 45 F. Supp. 438, 444 (D.N.J. 1999) (quoting *In re Chambers Dev. Co.*, 148 F.3d 214, 229 (3d Cir. 1998)). The Third Circuit has characterized judicial estoppel as an "extraordinary remedy" that may only be invoked against a party where three conditions are met: (1) "the party to be estopped must have taken two positions that are irreconcilably inconsistent"; (2) the party changed their position "in bad faith – i.e., with the intent to play fast and loose with the court"; and (3) application of the doctrine is "'tailored to address the harm identified' and no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Montrose Med. Grp. Participating Savings Plan v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001) (quoting *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 109 (3d Cir. 1999)). Importantly, inconsistent positions are not taken in bad faith, and thus judicial estoppel is not appropriate, where the party's "initial claim was never accepted or adopted by a court or agency." *Id.* at 782.

Here, while it is the case that Defendant argued for the application of Hong Kong law to Plaintiff's claims in the original Complaint and made no mention of Delaware law in seeking to dismiss those claims, the Court did not accept Defendant's argument. Thus, even if the Court were to find that Defendant's arguments for applying Delaware law to the claims asserted in the Amended Complaint are in fact inconsistent with Defendant's previous arguments for the application of Honk Kong law to the claims in the original Complaint, judicial estoppel would nonetheless be inappropriate.

### 3. Choice of Law

Having concluded that neither the Court nor the parties are bound to the Court's previous application of New Jersey law in ruling on the instant Motion, the Court must decide whether New Jersey or Delaware law governs Plaintiff's claims. In diversity cases, this Court looks to the choice-of-law rules of New Jersey in order to decide what body of substantive law applies. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). Under New Jersey law, the Court first asks whether an actual conflict exists. *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008). Here, the laws of New Jersey and Delaware with respect to unjust enrichment claims conflict in two distinct ways that could bear on the Plaintiff's claims. First, the statute of limitations for unjust enrichment claims under Delaware law is three years, *Gavin v. Club Holdings, LLC*, Civ. No. 15-175-RGA, 2016 WL 1298964, at *8 (D. Del. Mar. 31, 2016); however, under New Jersey law, the applicable statute of limitations for such claims is six years, *Penn Nat'l Ins. Co. v. North River Ins. Co.*, 783 F. App'x 195, 200 (3d Cir. 2019) ("[U]njust enrichment is a quasi-contractual claims, and while equitable in nature, those claims are subject to the six-year statute of limitations."); *Dunham v. Wells Fargo Bank*, Civ. No. 18-cv-08995 (PGS)(DEA), 2019 WL 9657790, at *3 (D.N.J. Nov. 6, 2019) ("Under New Jersey law, breach of contract and unjust enrichment claims are subject to a six-year

4

statute of limitations"). Second, unlike Delaware law, New Jersey law does not recognize an independent tort cause of action for unjust enrichment. *Schechter v. Hyundai N. Am.*, Civ. No. 18-13634 (FLW), 2019 WL 3416902, at *10 (D.N.J. July 29, 2019).

Because a conflict exists between New Jersey and Delaware law with respect to unjust enrichment claims, the Court must apply the "most significant relationship test" set forth in the Second Restatement of Conflict of Laws to determine which jurisdiction's law should govern the dispute. *Intarome Fragrance & Flavor Corp. v. Zarkades*, Civ. No. 07-873 (DRD), 2009 WL 931036, at *6 (D.N.J. Mar. 30, 2009). "This test is applied 'on an issue-by-issue basis' and 'is qualitative, not quantitative.'" *Swift v. Pandey*, No. 13-650 (JLL), 2014 WL 1745040, at *4 (D.N.J. Apr. 30, 2014) (quoting *Camp Jaycee*, 197 N.J. at 143). Importantly, where a claim concerns the internal affairs of a corporation, there is a presumption that the law of the state of incorporation applies to such claim. *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005).

Here, there is a threshold question as to whether Plaintiff's claims concern its own internal affairs such that Delaware law should apply. Defendant argues that the substance of Plaintiff's claims speaks directly to the relationship between Emerson and its former director, and the fiduciary duties Defendant owed to Emerson as such. Mot. 8-10; Reply 6-8. Plaintiff disagrees and argues that, as master of its claims, it has chosen to plead unjust enrichment claims that are most significantly related to New Jersey and New Jersey law rather than breach of fiduciary duty claims that would implicate the internal affairs of a Delaware corporation under Delaware law. Opp'n at 5-6. The Court finds that both of Plaintiff's unjust enrichment claims are inextricably intertwined with Emerson's internal affairs and should therefore be governed by Delaware law.

With respect to Plaintiff's unjust enrichment claim arising out of the indirect payments made to Defendant through the issuance of the special dividend, the Court agrees with Defendant that the claim implicates Emerson's internal affairs. This claim is centered on the fiduciary relationship between Defendant and Emerson, and Defendant's apparent conflict of interest in allegedly forcing the issuance of the special dividend. Specifically, Plaintiff alleges that Defendant engaged in self-dealing conduct through his dual positions as director of Emerson and Provisional Liquidator of Grande and was acting in his employer's and his own, as opposed to Emerson's, best interests in forcing the issuance of the special dividend. *See, e.g.*, AC ¶¶ 37, 39, 46, 63-68. Moreover, the Second Restatement identifies "the declaration and payment of dividends" as a matter involving a corporation's internal affairs that "cannot practicably be determined differently in different states." Restatement (Second) of Conflict of Laws § 302(2) & cmt. e (1971). In essence, the heart of Plaintiff's indirect unjust enrichment claim is the propriety of the special dividend in light of Defendant's alleged conflict of interest and Plaintiff's lost business opportunities as a result thereof – matters that are peculiar to the special relationship between a corporation and its directors and the business decisions made thereby. As such, the claim implicates Emerson's internal affairs, and Delaware law applies. *See Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).

Similarly, Plaintiff's unjust enrichment claim arising out of the direct payments made by Plaintiff to Defendant by virtue of his position as a director and chairman of Emerson's

5

board implicates Emerson's internal affairs in two ways. First, Plaintiff alleges that Defendant used his powers as Provisional Liquidator of Grande to place himself on Emerson's board, and "caused Emerson to directly pay him a total of at least $193,000." AC ¶ 56-57. To the extent Plaintiff challenges the validity of Defendant's election to Emerson's board or alleges that Defendant misused his power to award himself greater compensation than that to which he was entitled by nature of his position on the board, Plaintiff's claim clearly relates to Emerson's internal affairs and the relationship between Emerson and its directors. *See* Restatement (Second) of Conflict of Laws § 302 cmt. a (1971) (noting that the "election or appointment of directors and officers" falls within the scope of the internal affairs doctrine); *see also Bono v. O'Connor*, Civ. No. 15-6326 (FLW) (DEA), 2016 WL 2981475, at *13 (D.N.J. May 23, 2016). Second, there is no way to evaluate the merits of Plaintiff's claim that it did not receive the benefit of Defendant's "business acumen" and expertise without also evaluating the Defendant's management of Emerson and the broader business judgment of Emerson's board. In other words, as with Plaintiff's "indirect unjust enrichment" claim, the substance of Plaintiff's claim necessarily raises issues around the duties owed by Defendant to Emerson as a director of the company. Accordingly, the Court finds that Delaware law should also apply to Plaintiff's direct unjust enrichment claim.[2]

## B. Failure to State a Claim Upon Which Relief Can be Granted

As noted above, the statute of limitations in Delaware for unjust enrichment claims is three years. *Gavin*, 2016 WL 1298964, at *8. "The limitations period begins to run at the time the alleged wrongful act occurs." *Id.* Here, the alleged wrongful acts all occurred during Defendant's tenure as a director of Emerson between August 2011 and October 2014. AC ¶¶ 17, 36. Plaintiff did not bring this action until November 4, 2019 – more than five years after the issuance of the special dividend and Defendant's resignation from Emerson's board. Accordingly, Plaintiff's unjust enrichment claims are untimely under Delaware law.

---

[2] The Court also finds that the factors outlined in Section 6 of the Second Restatement do not suggest that New Jersey's relationship to this dispute is so significant as to justify a departure from the internal affairs doctrine. *See* Restatement (Second) of Conflict of Laws § 6. Both New Jersey and Delaware recognize the internal affairs doctrine and the need for the application of consistent legal rules and standards with respect to the internal affairs of a corporation. Moreover, the primary harm alleged – a waste of corporate resources that could have been used to explore lucrative business opportunities – implicates both New Jersey and Delaware interests. Perhaps most significantly, the need for uniformity and predictability in the legal standards applicable to claims concerning the relationship between a corporation and its directors, regardless of the precise label attached by a plaintiff to such claims, reinforces the need to apply Delaware law to Plaintiff's claims. Although New Jersey may have a stronger relationship with Emerson because Emerson's principal place of business is located in that state, that fact is insufficient on its own to warrant a departure from the internal affairs doctrine. *See Swift*, 2014 WL 1745040, at *6; *see also Krys v. Aaron*, 106 F. Supp. 3d 472, 484-86 (D.N.J. 2015).

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss, ECF No. 18, is **GRANTED**. An appropriate Order follows.

Date: March 30, 2021

WILLIAM J. MARTINI, U.S.D.J.